UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| |
|---|
| USDS SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: _9/30/2014_ |

CONNIE SHAO,

      Plaintiff,

 -v-

CITY UNIVERSITY OF NEW YORK, *et al.*,

      Defendants.

No. 12-cv-1566 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

  Plaintiff Connie Shao ("Plaintiff") brings this action against Defendants City University of New York-City College ("CUNY"), CUNY President Lisa Staiano-Coico ("Staiano-Coico"), and Donna L. Diane ("Diane," and collectively with CUNY and Staiano-Coico, "Defendants"), alleging discrimination on the basis of her race, national origin, and gender; retaliation; and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); 42 U.S.C. §§ 1981 and 1983; Article I, §§ 6 and 11 of the Constitution of the State of New York; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.* Plaintiff also asserts common law claims for intentional and negligent infliction of emotional distress against Staiano-Coico and Diane and breach of contract against CUNY, and seeks to hold CUNY liable for the actions of Staiano-Coico and Diane under the doctrine of respondeat superior. Now before the Court is Defendants' motion for summary judgment. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

I. Background

A. Facts[1]

Plaintiff – an Asian-American woman of Chinese ancestry (Def. 56.1 Stmt. ¶ 1) – served as CUNY's Director of Finance from September 2003 through June 30, 2011 (*id.*). During that time period, Plaintiff performed "accounting, banking, and investment functions," prepared various financial reports and plans, and oversaw the preparation of tax returns. (*Id.* ¶ 3.) From September 1, 2007 through the end of her employment at CUNY, Plaintiff was directly supervised by Diane, who served as CUNY's Controller. (*Id.* ¶ 4.) Prior to Diane's appointment as Controller, Plaintiff reported to Richard Metz, a non-accountant who served as Vice President for Administration and Finance ("Vice President Metz"). (*Id.* ¶ 4–6.) Throughout her employment, Plaintiff was also supervised by Vice President for Finance Dan Creange ("Vice President Creange"). (Pl. 56.1 Stmt. ¶ 6.) Staiano-Coico began service as CUNY's President in August 2010 and continues to hold that position. (Def. 56.1 Stmt. ¶ 8.) Plaintiff and Staiano-Coico never interacted personally. (*Id.* ¶ 9.)

Over the course of Plaintiff's employment at CUNY, she received four employment evaluations. The first two, completed by Vice President Creange on February 26, 2004 and June 20, 2006, were positive and characterized Plaintiff as "outstanding" and "perfect," respectively.

---

[1] The following facts are drawn principally from Defendants' Local Civil Rule 56.1 Statement ("Def. 56.1 Stmt.") (Doc. No. 29). Plaintiff has also submitted a Local Civil Rule 56.1 Statement ("Pl. 56.1 Stmt.") (Doc. No. 39); however, Plaintiff's Local Civil Rule 56.1 Statement does not comply with Rule 56.1(b), which requires the party opposing summary judgment to respond to the movant's statement with a correspondingly numbered statement. *See* Local Civil Rule 56.1(b). The Court also notes that portions of Plaintiff's Local Civil Rule 56.1 Statement do not comport with Local Civil Rule 56.1(d), which requires that "[e]ach statement by the movant . . . must be followed by citation to evidence which would be admissible . . . as required by Fed. R. Civ. P. 56(c)." Moreover, Plaintiff's Local Civil Rule 56.1 Statement in its entirety fails to provide pincites to "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). Accordingly, the Court deems Defendants' Local Civil Rule 56.1 Statement to be admitted, except as to those factual assertions presented in Plaintiffs' Local Civil Rule 56.1 Statement that conflict with Defendants' Local Civil Rule 56.1 Statement. *See* Fed. R. Civ. P. 56(e). Finally, in deciding Defendants' motion, the Court has considered Defendants' memorandum of law ("Def. Mem."), Plaintiff's opposition ("Opp'n"), Defendants' reply ("Def. Reply"), and the documents submitted in support thereof. (Doc. Nos. 30–35, 37–38, 40.)

(Pl. 56.1 Stmt. ¶¶ 8–9; *see also* Opp'n Ex. B at 10 ("2004 Evaluation"); *id.* at 8–9 ("2006 Evaluation").)  However, the latter two evaluations, which Diane prepared on January 27, 2010 and February 23, 2011, were much more negative and made specific references to "unsatisfactory" performance.  (Def. 56.1 Stmt. ¶¶ 41, 46; *see also* Declaration of Clement J. Colucci, dated September 13, 2013, Doc. No. 30 ("Colucci Decl.") Ex. 8 ("2010 Evaluation"); Colucci Decl. Ex. 9 ("2011 Evaluation").)  Plaintiff objected to the 2010 Evaluation and submitted a rebuttal to be included in her personnel file.  (Def. 56.1 Stmt. ¶ 42.)  Plaintiff also filed a grievance through her union concerning the 2010 Evaluation; however, Plaintiff ultimately abandoned the grievance after pursuing it unsuccessfully through the first two steps of the three-step grievance process.  (*Id.* ¶ 43.)  Following receipt of the 2011 Evaluation, Plaintiff again submitted a rebuttal, filed a grievance, and ultimately abandoned the grievance after the first two steps of the process.  (*Id.* ¶¶ 47–48.)

In February 2011, Diane met with Plaintiff for the purpose of conducting her yearly evaluation and announced that she had decided to terminate Plaintiff's employment.  (Def. 56.1 Stmt. ¶¶ 44, 49; Pl. 56.1 Stmt. ¶ 28.)  Immediately following the February 2011 Evaluation conference, Plaintiff received a termination letter, dated February 23, 2011, and "was escorted from the campus" the next day.[2]  (Colucci Decl. Ex. 13, Deposition of Connie Shao, May 23, 2013 ("Shao Dep.") 262:16–18; *see also* Def. 56.1 Stmt. ¶ 49; Pl. 56.1 Stmt. ¶ 28; Colucci Decl. Ex. 10.)  On April 21, 2011, Plaintiff appealed her termination to Staiano-Coico, who denied the appeal.  (Def. 56.1 Stmt. ¶ 50.)  Plaintiff thereafter asked Staiano-Coico for a statement of reasons for her denial of Plaintiff's appeal (*id. ¶* 52), and Staiano-Coico responded on July 12, 2011 by "referring to the two consecutive unsatisfactory evaluations" (*id.* ¶ 53; *see also* Declaration of Lisa Staiano-Coico, dated September 4, 2013, Doc. No. 32 ("Staiano-Coico

---

[2] Plaintiff's termination became effective on June 30, 2011.  (Colucci Decl. Ex. 10; Def. 56.1 Stmt. ¶ 49.)

Decl.") ¶¶ 3, 14, 17).   Thereafter, Plaintiff grieved her termination but again abandoned the process after unsuccessfully completing the first two steps.  (Def. 56.1 Stmt. ¶ 54.)

### B.  Procedural History

In September 2011, Plaintiff filed an administrative charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that she suffered discrimination on the basis of "race, national origin[,] and accent and [was] subjected to an adverse employment action [termination] when [she] formally complained" about that discrimination.  (Colucci Decl. Ex. 11; *see also* Def. 56.1 Stmt. ¶ 55.)   On December 3, 2011, the EEOC issued a letter regarding Plaintiff's EEOC charge, in which the EEOC determined that it was "unable to conclude that the information obtained [from Plaintiff's EEOC complaint] establishes violations of the statutes."  (Colucci Decl. Ex. 12; *see also* Def. 56.1 Stmt. ¶ 55.)  Plaintiff commenced this action on March 2, 2012, within 90 days of her receipt of the EEOC letter.  (Doc. No. 1.)  She subsequently filed the Amended Complaint on March 23, 2012, alleging numerous causes of action.[3]  (Doc. No. 2 ("Amended Compl.").)  In essence, Plaintiff alleges that she was subjected to ridicule and derision, denied training opportunities, retaliated against for refusing to terminate another Chinese employee, and ultimately terminated on the basis of her gender and Chinese ancestry, heritage, and accent.  (*See* Amended Compl.)  Defendants filed the instant motion seeking summary judgment on all of Plaintiff's causes of action on September 13, 2013 (Doc. Nos. 28–35), and the motion was fully submitted on November 8, 2013 (Doc. Nos. 37–40).

---

[3] Specifically, the Amended Complaint alleges that (1) CUNY engaged in discriminatory and retaliatory conduct in violation of Title VII; (2) Diane and Staiano-Coico engaged in discriminatory and retaliatory conduct in violation of 42 U.S.C. §§ 1981 and 1983; (3) Diane and Staiano-Coico engaged in and/or aided and abetted discriminatory and retaliatory conduct in violation of the NYSHRL and NYCHRL; (4) CUNY breached a settlement agreement by terminating Plaintiff; (5) CUNY is liable for the actions of Diane and Staiano-Coico under a theory of respondeat superior; (6) CUNY, Diane, and Staiano-Coico violated Plaintiff's due process and equal protection rights under the New York constitution; and (7) Diane and Staiano-Coico committed intentional and negligent infliction of emotional distress under the New York common law.  (*See* Amended Compl.)

4

## II.  LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments."  *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996).  Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted).  "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact.  A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the

moving party "'show[s]' – that is, point[s] out . . . – that there is an absence of evidence [in the record] to support the nonmoving party's [position]," *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

## III.  DISCUSSION

Defendants make four principal arguments in support of the instant motion for summary judgment.  First, Defendants argue that Plaintiff has failed to present sufficient evidence of discrimination to rebut Defendants' nondiscriminatory explanation for the decision to terminate Plaintiff.  (*See* Def. Mem. at 14–19.)  Second, Defendants argue that Plaintiff has not adequately exhausted her administrative remedies with respect to her claim of discriminatory retaliation and that, in any event, Plaintiff has failed to state a claim for retaliation.  (*See* Def. Mem. at 19–22.) Third, Defendants seek to limit which claims may be brought against CUNY and the individual defendants, based on a number of doctrines, including sovereign immunity.  (*See* Def. Mem. at 13 n.10.)  Fourth, Defendants attack Plaintiff's claims of intentional and negligent infliction of emotional distress on grounds of both legal and factual insufficiency.  (*See* Def. Mem. at 13 n.10, 22–25.)

Because the parties' briefs present legal arguments and theories in a somewhat scattershot manner, the Court will address the various causes of action as presented in the Amended Complaint.

### A.  Title VII

Plaintiff brings claims against CUNY for discrimination and retaliation based on race, gender, and national origin in violation of Title VII.  Specifically, Plaintiff contends that she was denied training opportunities and ultimately terminated because of her gender and Chinese ancestry and heritage.  She also asserts that she was subjected to a hostile work environment by virtue of Diane's discriminatory conduct, and that her termination constituted retaliation for her

refusal to follow Diane's orders to terminate Annie Wu ("Wu"), an employee of Chinese ethnicity.  The Court addresses each claim in turn.[4]

### 1.  Adverse Employment Action

In order to establish a claim for discrimination under Title VII, Plaintiff must demonstrate that she "has suffered an adverse job action under circumstances giving rise to an inference of discrimination on the basis of race, color, religion, sex, or national origin . . . ."  *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004).  Absent direct evidence of discriminatory animus, courts apply the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).  In the first step of this framework, the employee bears the burden of producing evidence sufficient to support a prima facie case of discrimination.  *See McDonnell Douglas*, 411 U.S. at 802.  To establish a prima facie case of discrimination, a plaintiff must show (1) membership in a protected class, (2) qualification for the position she held, (3) an adverse employment action, and (4) that the adverse employment action occurred under circumstances that give rise to an inference of discrimination.  *See Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491–92 (2d Cir. 2010).  The Second Circuit has characterized the evidence necessary for the plaintiff to satisfy this burden as "minimal" and "*de minimis*."  *See, e.g.*, *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005).

Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]."  *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996).  At this step, however, a defendant "need not persuade the court that it was actually motivated by the proffered reasons."

---

[4] Although Title VII requires a plaintiff to file a charge with the EEOC within 180 days of the alleged discriminatory conduct before bringing suit, *see* 42 U.S.C. § 2000e–5(e)(1), the Second Circuit has made clear that "presentation of a Title VII claim to the EEOC is not a jurisdictional prerequisite, but only a precondition to bringing a Title VII action that can be waived by the parties or the court," *Francis v. City of N.Y.*, 235 F.3d 763, 768 (2d Cir. 2000) (citation omitted).  Here, because Defendants have not raised any argument concerning Plaintiff's compliance with the 180-day precondition, the Court finds that Defendants have waived any such defense.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  Rather, a defendant simply "must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's [termination]."  *Id.* at 255.

Finally, if the defendant articulates a nondiscriminatory explanation for the action, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'"  *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *Burdine*, 450 U.S. at 253).  To create a material issue of fact and defeat a motion for summary judgment, however, a plaintiff is required to produce "not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action]."  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (alterations in original) (citation and internal quotation marks omitted).  In determining whether the articulated reason for the action is a pretext, "a fact-finder need not, and indeed should not, evaluate whether a defendant's stated purpose is unwise or unreasonable.  Rather, the inquiry is directed toward determining whether the articulated purpose is the actual purpose for the challenged employment-related action." *DeMarco v. Holy Cross High Sch.*, 4 F.3d 166, 170–71 (2d Cir. 1993).

Notwithstanding the *McDonnell Douglas* burden-shifting framework, "if a plaintiff is able to produce *direct* evidence of discrimination, [s]he may prevail without proving all the elements of a prima facie case."  *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002) (emphasis added); *see also Cartagena v. Ogden Servs. Corp.*, 995 F. Supp. 459, 462 (S.D.N.Y. 1998) (Sotomayor, J.) ("Alternatively, a plaintiff may meet his or her burden, not by the *McDonnell Douglas* framework, but rather through direct evidence.").  Direct evidence is

distinct "from the kind of evidence which makes out a *McDonnell Douglas* prima facie case – *i.e.*, evidence from which an inference of discrimination arises only because 'it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection,' and which inference is therefore immediately dispelled once the employer has produced evidence of a nondiscriminatory reason." *Cartagena*, 995 F. Supp. at 462 (quoting *Burdine*, 450 U.S. at 254). The Second Circuit has noted that "direct evidence" would roughly equate to a "smoking gun" indicating that a plaintiff's firing was discriminatory. *See Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1237, 1239 (2d Cir. 1995); *Ostrowski v. Atlantic Mut. Ins. Cos.*, 968 F.2d 171 (2d Cir. 1992) (describing as an example of direct evidence "statements of a person involved in the decisionmaking process that reflect a discriminatory or retaliatory animus of the type complained of in the suit").

Here, according to Plaintiff, Diane told Plaintiff at her February 23, 2011 evaluation conference that, "I hated you from the first day because of your accent." (*See* Declaration of Connie Shao, dated October 25, 2013, Doc. No. 38 ("Shao Decl."), ¶ 7; Shao Dep. 95:18–22).) Plaintiff's termination letter, also dated February 23, 2011, immediately followed this evaluation meeting with Diane, and, according to Plaintiff, she "was escorted from the campus the day after [she] had the meeting with [Diane]." (Shao Dep. 262:16–18; *see also* Def. 56.1 Stmt. ¶ 49; Pl. 56.1 Stmt. ¶ 28; Colucci Decl. Ex. 10.) Diane was Plaintiff's supervisor and allegedly made the remark both during a formal evaluation meeting and in close temporal proximity to Plaintiff's termination.[5] If believed, the remark could easily be viewed as a "smoking gun" admission that Plaintiff's termination was directly motivated by Diane's hostility toward Plaintiff's Chinese heritage. Consequently, the Court finds that Plaintiff has met her burden of establishing a Title

---

[5] According to Plaintiff, Diane had previously ridiculed Plaintiff's Chinese accent both privately and "in front of other employees." (Pl. 56.1 Stmt. ¶ 12; *see also* Shao Decl. ¶¶ 6–8, 18, 67, 72.)

VII claim with respect to her termination through this direct evidence and denies Defendants' motion as to that claim. *See, e.g.*, *Cartagena*, 995 F. Supp. at 463–64 (finding that direct evidence of discriminatory remarks made by the person who decided to terminate the plaintiff was sufficient evidence of discrimination to withstand summary judgment motion).

With respect to Plaintiff's gender discrimination claim against CUNY, Plaintiff has offered very little evidence that would suggest discriminatory animus related to her gender. Nevertheless, a party moving for summary judgment on claims for which the non-moving party would bear the burden of persuasion at trial must either (1) identify parts of the record showing the absence of a material factual dispute or (2) point out that there is no evidence to support the non-moving party's claims. *Golden Pac. Bancorp. v. F.D.I.C.*, 375 F.3d 196, 200 (2d Cir. 2004) (quoting *Celotex Corp.*, 477 U.S. at 323, 325). Because Defendants' Local Civil Rule 56.1 Statement and briefs entirely ignore Plaintiff's gender discrimination claim, Defendants have failed to meet either prong, and summary judgment must be denied as to this claim, as well. *See also* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought."); Local Civil Rule 56.1 (requiring moving party to attach statement "of the material facts as to which the moving party contends there is no genuine issue to be tried" and warning that failure to do so may result in denial of summary judgment); *Jackson v. Federal Exp.*, No. 12-1475, 2014 WL 4412333, at *4 n.3 (2d Cir. Sept. 9, 2014) (suggesting that defendant-movant must submit "an evidentiary proffer sufficient to defeat a claim" before court may grant Rule 56 motion as to that claim, even if motion is unopposed).

As to Plaintiff's remaining claim of discrimination against CUNY – alleging that CUNY deprived her of training opportunities in violation of Title VII – Plaintiff has offered no direct evidence of discrimination and the Court finds that Plaintiff has failed to meet the standards of

the *McDonnell Douglas* burden-shifting test.  "To successfully establish denial of training opportunities as an adverse employment action, a plaintiff must demonstrate that the employer offered training to other employees and that [the plaintiff] was denied training under circumstances giving rise to an inference of discrimination." *Albuja v. Nat'l Broad. Co. Universal, Inc.*, 851 F. Supp. 2d 599, 610 (S.D.N.Y. 2012) (citations omitted); *see also Nidzon v. Konica Minolta Bus. Solutions, USA, Inc.*, 752 F. Supp. 2d 336, 349 (S.D.N.Y 2010) (rejecting denial of training opportunities claim where the plaintiff "presented no evidence that he was denied training opportunities provided to other . . . employees").  In this case, Plaintiff has not presented any evidence of other employees being allowed to attend training events where Plaintiff was denied permission to attend.  Plaintiff's Rule 56.1 Statement states only that Diane "refused to permit Ms. Shao to attend relevant and often important training sessions and meetings" without either pointing to specific instances of Diane refusing to permit Plaintiff to attend such events or suggesting that other similarly situated employees were permitted to attend the events. (*See* Pl. 56.1 Stmt. ¶ 25.)[6]  Moreover, the Court's own review of the record similarly reveals a lack of any evidence suggesting that Plaintiff was denied training opportunities available to other employees.  (*See, e.g.*, Shao Decl. ¶¶ 66, 80–88.)  Thus, Plaintiff has not established a prima facie case of discrimination with respect to her inability to take advantage of training opportunities, and the Court grants Defendants' motion for summary judgment to the extent Plaintiff's discrimination claims are based upon denial of training opportunities.

### 2. Hostile Work Environment

Plaintiff also brings a hostile work environment claim under Title VII.  (*See* Amended Compl. ¶¶ 26–46; *see also* Opp'n at 20–22.)  Although Defendants purport to seek summary

---

[6] As noted above, Plaintiff's Rule 56.1 Statement does not provide pincites to "particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).

judgment with respect to all of Plaintiff's claims, Defendants do not specifically address Plaintiff's hostile work environment claim in either their opening brief or reply brief.  (*See generally* Def. Mem.; Def. Reply)  The Second Circuit has made clear that, even in the context of an unopposed motion, "the district court must examine the defendant-movant's submission for evidentiary and legal sufficiency," and suggested that courts should only scrutinize the viability of a plaintiff's claim after first finding that the defendant-movant has "submit[ted] an evidentiary proffer sufficient to defeat [the] claim." *Jackson*, 2014 WL 4412333, at *4 n.3.

As noted above, Defendants are not entitled to judgment as a matter of law on Plaintiff's hostile work environment claim unless Defendants have "'show[n]' – that is, point[ed] out . . . – that there is an absence of evidence [in the record] to support the nonmoving party's [position]." *See Celotex Corp.*, 477 U.S. at 325.  Defendants have not done so.  Accordingly, the Court denies Defendants' motion for summary judgment as to Plaintiff's Title VII hostile work environment claim.[7]

### 3.  Retaliation

Plaintiff also brings claims for retaliation under Title VII, alleging that Defendants retaliated against her for refusing to terminate Wu for a discriminatory purpose.  (*See* Amended Compl. ¶¶ 70–74, 77–83, 87–92; Shao Decl. ¶ 42.)[8]  Because the Court finds that Plaintiff failed

---

[7] Although the Court finds that Defendants as movants have failed to carry their burden with respect to this hostile work environment claim under Title VII, the Court is doubtful that sufficient facts exist in the record, or, for that matter, have been alleged in the operative pleading, to support such a claim.  *See, e.g.*, *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, (1998) (holding that "simple teasing . . . offhand comments, [and] isolated incidents (unless extremely serious)" are not discriminatory changes in the "terms and conditions of employment"); *Williams v. Cnty. of Westchester*, 171 F.3d 98, 100 (2d Cir. 1999) (holding that, to meet his burden, the plaintiff must show "more than a few isolated incidents" and that "evidence solely of sporadic" discrimination does not suffice).  Nevertheless, this issue is not properly before the Court and may be addressed before or during trial.

[8] Since neither the Amended Complaint nor Plaintiff's brief in opposition to Defendants' motion asserts that Plaintiff was terminated in retaliation for filing a complaint with her union following the February 2010 evaluation, Plaintiff has not alleged a cause of action for retaliation stemming from that complaint.

to raise this retaliation claim in her EEOC complaint, Plaintiff is precluded from raising the Title VII retaliation claim in this action.

Before bringing suit under Title VII, a plaintiff must first file a timely charge with the EEOC or with a "State or local agency with authority to grant or seek relief from such practice." 42 U.S.C. § 2000e–5(e)(1). "Exhaustion of remedies is a precondition to suit, and a plaintiff typically may raise in a district court only those claims that either were included in or are 'reasonably related to' the allegations contained in her EEOC charge." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 83 (2d Cir. 2001) (citations omitted). Claims that were not included in an EEOC charge may only be raised in a subsequent suit in three situations: "(1) where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; (2) where the claim alleges an employer's retaliation for filing an EEOC charge; and (3) where a plaintiff alleges further incidents of discrimination carried out in the same manner alleged in . . . the EEOC charge." *Carter v. New Venture Gear, Inc.*, 310 F. App'x 454, 458 (2d Cir. 2009); *see also Butts v. N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402–03 (2d Cir. 1993), *superseded by statute on other grounds*, Civil Rights Act of 1991, Pub. L. No. 102–166, 105 Stat. 1071, *as recognized in Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 693 (2d Cir. 1998).

Here, Plaintiff's EEOC charge does not reference Plaintiff's refusal to terminate Wu. (*See* Colucci Decl. Ex. 11.) Rather, Plaintiff alleged in her EEOC charge that Diane "was very critical of [her] work product and oftentimes made references to [her] accent by criticizing it . . . in front of my staff and others," that Diane singled Plaintiff out and "treated [her] with bias," and that Plaintiff's union grieved on her behalf after Plaintiff received an adverse evaluation in February 2010. (*Id.*) In concluding the EEOC charge, Plaintiff wrote that "[she]

believe[d] that [she has] been discriminated against based on [her] race, national origin and accent and subjected to an adverse employment action when [she] formally complained." (*Id.*)

The Court finds that the retaliation claim alleged in the Amended Complaint – that Plaintiff was terminated as retaliation for her refusal to terminate Wu (*see, e.g.*, Amended Compl. ¶¶ 54, 55, 61) – is not "reasonably related" to the allegations set forth in her EEOC charge, and that none of the three exceptions to the exhaustion requirement is applicable. First, Plaintiff's EEOC charge made no mention whatsoever of either Plaintiff's refusal to terminate Wu or Diane's unsatisfactory evaluation of Plaintiff in February 2011. (*See id.*) Moreover, Plaintiff's EEOC charge suggested that the 2010 Evaluation – which is the only evaluation mentioned in the charge – was motivated by impermissible discrimination on the basis of race and national origin rather than any retaliation associated with refusing to terminate a subordinate. (*See id.*). Thus, Plaintiff's retaliation claim would not fall within the scope of the EEOC investigation that "can reasonably be expected to grow out of the charge of discrimination" as set forth in Plaintiff's EEOC charge. *Carter*, 310 F. App'x at 458. Second, Plaintiff's claim does not "allege[] an employer's retaliation for filing an EEOC charge," *id.*, nor could it, since Plaintiff filed her EEOC complaint *after* her termination (*see* Colucci Decl. Ex. 11). Third, the claim of retaliation here – specifically, that Defendants terminated Plaintiff as a result of her refusal to fire Wu – is a far cry from her allegations in the EEOC charge, wherein Plaintiff claimed that her complaint to her union (which likewise made no mention of the Wu incident) about her February 2010 evaluation prompted her termination. (*Id.*) Accordingly, the Court finds that Plaintiff has failed to satisfy the exhaustion requirements applicable to her Title VII retaliation claim and grants Defendant's motion for summary judgment as to that claim.

B.  42 U.S.C. §§ 1981 and 1983

Plaintiff also brings federal causes of action against Diane and Staiano-Coico arising under §§ 1981 and 1983.  Although Title VII claims may not be brought against individual defendants, claims of employment discrimination under §§ 1981 and 1983 may.  *See Feingold*, 366 F.3d at 159 n.20; *cf. Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 n.8 (2d Cir. 2006) ("[A]n individual defendant cannot be held personally liable under Title VII.").  In all other respects, "[t]he same substantive standards apply to claims of employment discrimination under Title VII, § 1981, and . . . " § 1983.[9]  *Joseph v. Marco Polo Network, Inc.*, No. 09-cv-1597 (DLC), 2010 WL 4513298, at *7 (S.D.N.Y. Nov. 10, 2010) (citing *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010)); *see also Feingold*, 366 F.3d at 159 ("Once action under color of state law is established, Feingold's equal protection claim parallels his Title VII claim.  The elements of one are generally the same as the elements of the other and the two must stand or fall together." (footnote and citations omitted)).  The Court will separately address the claims against Diane and Staiano-Coico.

1.  Diane

As with Plaintiff's Title VII discrimination claims, the Court finds that Plaintiff has provided sufficient direct evidence of discrimination by Diane to withstand Defendants' motion for summary judgment on the §§ 1981 and 1983 discrimination claims.  However, the Court grants Defendants' motion for summary judgment to the extent Plaintiff's discrimination claims against Diane are based upon denial of training opportunities.

With respect to Plaintiff's retaliation claims, the law is clear that "[m]ost of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are

---

[9] Because "Section 1981 does not prohibit discrimination on the basis of gender or . . . national origin," *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998), Plaintiff's remaining § 1981 claim against Diane extends only to discrimination based on Plaintiff's race.

also applicable to claims of discrimination in employment in violation of § 1981 or the Equal Protection Clause." *Cnty. of Oneida*, 375 F.3d at 225; *see also Joseph*, 2010 WL 4513298, at *16 n.23 (citing *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720, 723 (2d Cir. 2010)). By contrast, the Second Circuit has declined "to break new constitutional ground" by recognizing a claim for retaliation arising under § 1983. *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996). And unlike Title VII, no administrative exhaustion requirement applies to a claim under § 1981. *Holt v. Cont'l Grp., Inc.*, 708 F.2d 87, 90 (2d Cir. 1983). Nevertheless, it is clear that Plaintiff has failed to offer any evidence in support of her retaliation claims against Diane. Indeed, not only does Plaintiff's opposition brief fail to make any argument regarding the merits of her retaliation claims, but Plaintiff's Rule 56.1 Statement is devoid of *any* statement of material facts concerning Plaintiff's supposed refusal to terminate Wu at Diane's behest. (*See generally* Pl. 56.1 Stmt.) Accordingly, the Court has little difficulty granting Defendants' motion for summary judgment as to Plaintiff's claims of retaliation under §§ 1981 and 1983.

### 2. Staiano-Coico

With respect to Plaintiff's claims against Staiano-Coico, the Court notes the complete absence of any factual allegations in Plaintiff's Rule 56.1 Statement concerning Staiano-Coico's involvement in any discriminatory actions (*see generally* Pl. 56.1 Stmt.), as well as the lack of any legal argument addressing why Diane's conduct should be imputed to Staiano-Coico (*see generally* Opp'n). Indeed, Plaintiff's Rule 56.1 Statement fails even to mention Staiano-Coico (*see* Pl. 56.1 Stmt.), and Plaintiff's opposition brief addresses Staiano-Coico's supervision of Diane in only two instances, in wholly cursory fashion (*see* Opp'n at 7 ("Specifically, Ms. Shao contends that Donna Lee Diane, *while under the supervision of Lisa Stainon-Coico* [sic], ridiculed Ms. Shao's Chinese origin, belittled and embarrassed Ms. Shao . . . , and regularly engaged in workplace sabotage against Ms. Shao . . . ." (emphasis added)); *id.* at 18 ("[T]he

declaration of Connie Shao clearly illustrates a comprehensive and thorough campaign of sabotage, beratement, and embarrassment by Donna Lee Diane, *under Lisa Stainano-Coico's* [sic] *stewardship . . . ."* (emphasis added))).   Moreover, Plaintiff cannot rely on a theory of respondeat superior in order to hold Staiano-Coico, in her official capacity, liable under §§ 1981 or 1983.  *See Cnty. of Oneida*, 375 F.3d at 226.   Based on the record – or rather the lack of a record – Defendants are correct to argue that "plaintiff appears to have abandoned her claims against President Coico."  (Def. Reply at 1; *cf.* Def. 56.1 Stmt. ¶ 51 ("President Coico was not personally acquainted with plaintiff.").)   Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's federal claims against Staiano-Coico.

### C.  State and City Claims

Plaintiff also brings various state and city law claims against Defendants.  Specifically, Plaintiff alleges that (1) CUNY breached a settlement agreement by terminating Plaintiff; (2) CUNY, Diane, and Staiano-Coico violated Plaintiff's due process and equal protection rights under the New York constitution;[10] (3) Diane and Staiano-Coico engaged in and/or aided and abetted discriminatory and retaliatory conduct in violation of the NYSHRL and NYCHRL; (4) Diane and Staiano-Coico committed intentional and negligent infliction of emotional distress; and (5) CUNY is liable for the actions of Diane and Staiano-Coico under a theory of respondeat superior.  The Court will address each of these in turn.

---

[10] Defendants argue that Plaintiff's claims arising under the New York constitution are barred because of the adequacy of other remedies.  (*See* Def. Mem. at 13 n.10.)  Plaintiff does not respond to that argument, and Plaintiff also concedes that the discrimination alleged here, if proven, would be prohibited by the NYSHRL.  (*See* Opp'n at 22–23.)  Thus, the Court finds that Plaintiff has abandoned the constitutional claims and will examine Plaintiff's state law claims under the NYSHRL, rather than the New York constitution.  *See, e.g.*, *Di Giovanna v. Beth Israel Med. Ctr.*, 651 F. Supp. 2d 193, 208 (S.D.N.Y. 2009) (finding abandonment where plaintiff "made no attempt to rebut defendants' motion for summary judgment" on cause of action).

### 1. Defendant CUNY

Defendants correctly argue that Plaintiff's myriad state and city law claims against CUNY are barred by the Eleventh Amendment to the United States Constitution. (Def. Mem. at 13 n.10.) The Second Circuit has recognized that "Plaintiffs' suits against CUNY are equivalent to suits against the State of New York and are therefore barred by the Eleventh Amendment." *Clissuras v. City Univ. of N.Y.*, 359 F.3d 79, 83 (2d Cir. 2004) (per curiam); *see also Jackson v. City Univ. of N.Y.*, No. 05-cv-8712 (JSR), 2006 WL 1751247, at *2 (S.D.N.Y. June 23, 2006) ("It is well-settled that the Eleventh Amendment bars claims for damages against nonconsenting states and against entities, like Hunter College, that are considered 'arms of the state.'"); *cf. Jattan v. Queens Coll. of City Univ. of N.Y.*, 883 N.Y.S.2d 110, 112 (App. Div. 2d Dep't 2009) ("[T]he City of New York does not have the power to waive the State's sovereign immunity by passing an anti-discrimination code provision applicable to instrumentalities of the State." (citations omitted)). Thus, Defendants are entitled to judgment as a matter of law with respect to all of Plaintiff's state and city law claims against CUNY.[11]

### 2. Defendants Diane and Staiano-Coico

#### a. Adverse Employment Action

As to the state and city law claims against Diane and Staiano-Coico, "[t]he same substantive standards apply to claims of employment discrimination under Title VII, § 1981, and the NYSHRL," *Joseph*, 2010 WL 4513298, at *7 (citing *Vivenzio*, 611 F.3d at 106), whereas the NYCHRL likely applies to a broader category of discrimination than the NYSHRL, *see, e.g.*, *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 277–79 (2d Cir. 2009). Nevertheless, although "the Second Circuit has directed the district courts to conduct an analysis of the

---

[11] As recognized above, this sovereign immunity does not extend to Plaintiff's Title VII claims against CUNY. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976).

NYCHRL claims that is separate from that undertaken for Title VII and [NYSHRL] claims . . . , the courts have continued to employ the familiar burden-shifting analysis of *McDonnell Douglas*." *Kerman-Mastour v. FINRA*, 814 F. Supp. 2d 355, 366 (S.D.N.Y. 2011) (citing *Loeffler*, 582 F.3d at 278–79).  The Court also notes that, unlike Title VII, the NYSHRL and NYCHRL permit an individual defendant to be held liable for employment discrimination. Specifically, an individual may be liable where that individual "actually participates in the conduct giving rise to a discrimination claim." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir.1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *see Feingold*, 366 F.3d at 158 ("[T]he claims against the named individual defendants may proceed under the NYCHRL . . . .").

For the same reasons stated above, the Court finds that Plaintiff has provided sufficient direct evidence of discrimination based on her termination to defeat Diane's motion for summary judgment with respect to her state and city law race and national origin discrimination claims. Similarly, the Court finds that Plaintiff's state and city law gender discrimination claims survive summary judgment by virtue of Defendants' failure to proffer evidence, or even argument, sufficient to rebut those claims.  However, the Court grants Defendants' motion for summary judgment to the extent Plaintiff's state and city law discrimination claims against Diane are based upon any denials of training opportunities, since even the broader NYCHRL standard cannot be stretched so far as to cover the conduct alleged with respect to Defendants' denial of training opportunities.

With respect to Staiano-Coico, the Court finds that Plaintiff has failed to present any evidence touching upon her involvement in any discriminatory conduct.  Accordingly, the Court grants Defendants' motion for summary judgment as to all of Plaintiff's state and city law claims against Staiano-Coico.

b.  Hostile Work Environment

Although not explicitly pleaded in the causes of action section of the Amended Complaint, Plaintiff also brings hostile work environment claims under the NYSHRL and NYCHRL.  (*See* Amended Compl. ¶¶ 26–46; *see also* Opp'n at 22–23.)  As noted above, Defendants do not specifically address Plaintiff's hostile work environment claims in either of their briefs in support of the summary judgment motion.  (*See generally* Def. Mem.; Def. Reply) Accordingly, the Court denies Defendants' motion for summary judgment as to Plaintiff's NYSHRL and NYCHRL hostile work environment claims against Diane.

c.  Retaliation

Plaintiff's remaining NYSHRL retaliation claim against Diane is examined under the same framework as the federal retaliation claims, discussed above.  *See Joseph*, 2010 WL 4513298, at *16 n.23 (citing *Fincher*, 604 F.3d at 720, 723).  The NYCHRL, on the other hand, subjects allegations of retaliation to a less restrictive standard.  *See Fincher*, 604 F.3d at 723 ("[T]he retaliation inquiry under the [NY]CHRL is broader than its federal counterpart." (citation and internal quotation marks omitted)).  Specifically, the NYCHRL prohibits retaliation "in any manner" and does not require that the alleged retaliation "result in an ultimate action with respect to employment . . . or in a materially adverse change in the terms and conditions of employment" in order to be actionable.  N.Y.C. Admin. Code § 8-107(7).  Notwithstanding the broader scope of conduct proscribed by the NYCHRL, Plaintiff "has not made any argument touching on the [NY]CHRL in her brief."  *Fincher*, 604 F.3d at 723.  Thus, any argument that Plaintiff might have made concerning why her retaliation claim should survive the broader NYCHRL inquiry has been abandoned.  *See id.*  In light of the Court's analysis of Plaintiff's federal retaliation claims above, as well as Plaintiff's failure to offer facts or argument in support of her NYCHRL

retaliation claim, the Court grants Defendants' motion for summary judgment as to Plaintiff's claims of retaliation under the NYSHRL and NYCHRL.

### d.  Intentional and Negligent Infliction of Emotional Distress

Plaintiff also claims that that both Diane and Staiano-Coico intentionally and negligently inflicted emotional distress on Plaintiff.  (Amended Compl. ¶¶ 110–114.)  Under New York law, a plaintiff claiming intentional infliction of emotional distress must show:  "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress."  *Howell v. N.Y. Post Co.*, 596 N.Y.S.2d 350, 353 (N.Y. 1993). With respect to the first element, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.* (citations omitted); *id.* ("[O]f the intentional infliction of emotional distress claims [in cases] considered by [the New York Court of Appeals], every one has failed because the alleged conduct was not sufficiently outrageous." (citations omitted)); *see also Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985) (rejecting intentional infliction of emotional distress claim in case involving employer's alleged racial discrimination); *cf. Silberstein v. Advance Magazine Publishers, Inc.*, 988 F. Supp. 391, 394 (S.D.N.Y. 1997) ("[I]t seems to this Court extraordinarily unlikely that [New York courts] would allow liability for employment discrimination on the intentional infliction theory in the face of the Legislature's enactment of a more limited [statutory] remedy.").

A claim for negligent infliction of emotional distress must show either that "[the plaintiff was] threatened with physical harm as a result of defendant's negligence" and suffered "emotional injury from witnessing the death or serious bodily injury of a member of her

immediate family" (the "bystander" theory), or that "[the plaintiff] suffer[ed] an emotional injury from defendant's breach of a duty which unreasonably endangered her own physical safety" (the "direct duty" theory). *In re Air Crash at Belle Harbor, N.Y. on November 12, 2001*, 508 F. Supp. 2d 244, 247 (S.D.N.Y. 2007) (citing cases); *see also Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996) ("Under New York law, a plaintiff may establish [a claim for negligent infliction of emotional distress] in one of two ways:  (1) the 'bystander' theory; or (2) the 'direct duty theory.'").

Here, there is no evidence in the record that either Diane or Staiano-Coico engaged in "extreme or outrageous conduct" toward Plaintiff, nor is there any evidence of Plaintiff having suffered severe emotional distress sufficient to support an intentional infliction of emotional distress claim.  With respect to Plaintiff's claims of negligent infliction of emotional distress, there is no evidence that Plaintiff was threatened with physical harm or that either Diane or Staiano-Coico endangered Plaintiff's safety in any way.  Accordingly, the Court has little difficulty granting Defendants' motion for summary judgment as to Plaintiff's intentional and negligent infliction of emotional distress claims.

III. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is granted in part and denied in part.  Specifically, the following claims remain:  (1) race, national origin, and gender discrimination claims related to Plaintiff's termination under Title VII against CUNY; (2) a hostile work environment claim under Title VII against CUNY; (3) race, national origin, and gender discrimination claims related to Plaintiff's termination under § 1981, § 1983, NYSHRL, and NYCHRL against Diane; and (4) hostile work environment claims under NYSHRL and NYCHRL against Diane.  Therefore, a trial is necessary to resolve these claims.

Accordingly, IT IS HEREBY ORDERED THAT the parties shall appear for a conference on October 22, 2014 at 12:30 p.m. in Courtroom 905 of the Thurgood Marshall Courthouse to set a trial date and a schedule for pre-trial submissions. The Clerk of the Court is respectfully directed to terminate the motion pending at docket entry 28.

SO ORDERED.

DATED:      September 30, 2014
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE